UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                      Case No. 00-cr-161-pp

MICHAEL MCMURTY,

        Defendant.

**ORDER DENYING DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE (DKT. NO. 96)**

On April 26, 2001, Judge Clevert sentenced the defendant to serve 235 months imprisonment, followed by three years of supervised release. Dkt. No. 65. On October 8, 2015, Judge Clevert entered an amended judgment, reducing the term of the defendant's imprisonment to 120 months followed by three years of supervised release. Dkt. No. 87. This reduction made the defendant eligible for immediate release, and he began serving his term of thirty-six months of supervised release the next day—October 9, 2015. Id.; see also Dkt. No. 88 at 1. On April 12, 2016, the court held a hearing on the conditions of the defendant's supervised release. Dkt. No. 93. The court commented on the defendant's unhealthy relationship with his girlfriend, Ms. Johnson, but instead of revoking the defendant's supervised release, the court modified the defendant's conditions to include continuing anger management treatment with the probation office and a prohibition against residing with Ms.

1

Johnson. Id. The defendant's supervised release term is scheduled to expire on October 9, 2018. The defendant has served two years of his three-year term.

On August 7, 2017, the defendant, through counsel, filed a motion asking the court to terminate his supervised release. Dkt. No. 96. The motion asserts that the defendant's life has changed dramatically since he appeared in court in April of 2016. Id. The defendant states that on Memorial Day 2016, he was shot and sustained injuries. As a result, he spends his time focusing on recovering mentally and physically from his trauma. Id. He also states that "[h]e is no longer in the same relationship"—presumably with Ms. Johnson—and that he is applying for disability benefits. Id. The defendant opines that "there isn't much point to continued supervision," because he overserved his sentence substantially and thus could not be sent back to prison if ever he were revoked, and because the probation office currently not providing him with significant services. Id. at 2.

The government objected to the defendant's request. Dkt. No. 97. The government agrees that "[the defendant] has a compelling argument to terminate supervised release" and that "there is no is no threat of incarceration if he does not follow the rules of supervision[,]" but it advocates that his supervision continue. Id. The prosecutor points to the defendant's violent criminal history, particularly his history of violence—sometimes extreme— against women. Id. The government also notes that in February 2016—after the defendant began his supervision—police arrested him on allegations that he had threatened to beat his girlfriend. Id.

Finally, the government provides details of the Memorial Day shooting. Id. The government says that, on May 29, 2016, "[the defendant] was at the same girlfriend's family gathering and the two argued. [The defendant] then left the gathering and came back with his cousin. [The defendant] was shot four times when he returned to the gathering." Id. at 2. Based on these facts, the government argues that, while the defendant's contact with his supervising agent has become congenial since the shooting, the defendant's past conduct has been violent and variable for his whole life. Id. The government argues that the continued support that the defendant receives from his supervising agent provides some of the only stability he has in his life. Id.

Nor does the probation office support the defendant's request. Dkt. No. 99. The probation office's report states that the defendant has maintained a stable residence since April 2016, that he has attended all appointments with his probation officer, and that there has been no indication of recent drug use or contacts with law enforcement officers. Id. at 2. In this regard, the probation office's report corroborates the defendant's motion. The probation office, however, also corroborates the government's statements regarding the May 2016 shooting. The probation report says that the defendant fought with his girlfriend's family because he was not happy with what she was wearing at the party. Id. The girlfriend's son then shot the defendant four times. Id. Probation agrees that the defendant has been compliant since he was shot, but expresses the hope that continued supervision might help cement that recent improvement. Id.

The court is pleased to hear that the defendant is no longer in the relationship that has involved so much violence and strife. The court is also glad that the defendant has been compliant with the terms of his supervision, and has worked to reach out and develop a rapport with his probation officer, since the May 2016 shooting. The court commends him on these improvements. The court understands that if the court were to revoke the defendant's release in the next year, the court could not impose a sentence of incarceration, and that he is not under intensive supervision. But the court agrees with the government and the probation office that early termination is not appropriate. First, as both the government and probation note, early termination of supervised release is unusual. Courts generally grant such requests in extraordinary cases, when defendants have gone above and beyond the requirements of their supervised release. In this case, the defendant did not do well the first year or so he was on release, and while he has done much better since he was shot, his motion does not indicate that he has gone above and beyond. Second, the defendant states no reason why he needs early termination. He acknowledges that he is not under intensive supervision. He indicates that he has not been working, so supervision does not interfere with his ability to look for jobs. He has not described any hardship which continuing supervision places on him. Finally, both the government and probation emphasize that the defendant's connection with his probation officer provides him with community support and stability—something that is important for

someone who, while he has been on release for two years, has been in compliance for much less time.

The court strongly encourages the defendant to keep up the good work, and is relieved that the result of the shooting was not worse.

The court **DENIES** the defendant's motion for early termination of supervised release. Dkt. No. 96.

Dated in Milwaukee, Wisconsin this 23rd day of October, 2017.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**